UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY KLENKE,                                                         Case No.

    Plaintiff,                                                              Hon.

vs.

MARIO CUNNINGHAM, KATHY WARNER,
and GREG SKIPPER,
in their individual capacities,

Defendants.
_____

Hannah R. Fielstra (P82101)
Kevin S. Ernst (P44543)
ERNST CHARARA & LOVELL, PLC
Attorneys for Plaintiff
645 Griswold, Ste. 4100
Detroit, MI 48226
(313) 965-5555 / (313) 965-5556
hannah@ecllawfirm.com
kevin@ecllawfirm.com
_____

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

    NOW COMES Plaintiff, KRISTY KLENKE, by and through her attorneys, ERNST CHARARA & LOVELL, PLC, and for her Complaint against Defendants states as follows:

**JURISDICTION AND VENUE**

1

1. This is a civil rights action in which Plaintiff, KRISTY KLENKE, seeks relief and all damages that flow from Defendants' multiple violations of her rights, privileges and immunities as secured by the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. §1983 and the Michigan Elliot-Larsen Civil Rights Act.

2. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, and jurisdiction is therefore proper pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this District under 28 U.S.C. § 1391. The parties reside, or at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiffs' claims also occurred in this judicial district.

## PARTIES

4. Plaintiff is a 42 year-old woman residing in the County of Ingham, State of Michigan, who worked for the Michigan Department of Corrections ("MDOC") at the Michigan Reformatory facility.

5. Defendant Mario Cunningham was, at all relevant times, a Sergeant for Defendant MDOC and was employed as a supervisor at the same facility where Plaintiff worked.

6. Defendant Kathy Warner was, at all relevant times, employed by the Michigan Department of Corrections ("MDOC") and was in charge of the Office of Executive Affairs.

7. Defendant Greg Skipper was, at all relevant times, employed by the Michigan Department of Corrections ("MDOC") and was the Warden at the Michigan Reformatory facility, where Plaintiff and Defendant Cunningham were employed.

## FACTS

8. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

9. Plaintiff was employed by Defendant MDOC at the Michigan Reformatory facility starting in about February of 2019. At all times relevant herein, Plaintiff worked at the Michigan Reformatory facility.

10. At all relevant times herein, Defendant Cunningham was Plaintiff's supervisor at the Michigan Reformatory facility.

11. A few months after Ms. Klenke had been employed with the MDOC and was working under Defendant Cunningham, Defendant asked her for her phone number. Ms. Klenke gave him her phone number and they began communicating by phone text message for from approximately April 6, 2019 through June of 2019.

12. Around approximately the end of April 2019, Defendant Cunningham and Ms. Klenke met outside of work on a few occasions.

13. Thereafter, Ms. Klenke learned that Defendant Cunningham was married. This information made Ms. Klenke extremely uncomfortable.

14. Also during that time, Defendant Cunningham told other staff about his relationship with Ms. Klenke, called her frequently at work on his days off, and frequently vistited Ms. Klenke on her assignments while at work.

15. Ms. Klenke grew more uncomfortable with Defendant Cunningham's behavior and confronted him around June of 2019. She explained that she only wished to have a professional relationship at work and did not want to see him personally.

16. Despite Ms. Klenke telling Defendant that she no longer wished to communicate with him, he continued to call and text her. She explained on a multitude of occasions via text message that she did not wish to talk to him or see him outside of work.

17. Ms. Klenke eventually stopped responding to Defendant's text messages, as she was uncomfortable with his behavior and they became more frequent.

18. Around the end of June 2019, Defendant Cunningham sent Ms. Klenke flowers at work, unsolicited. Ms. Klenke was embarrassed and extremely uncomfortable by this gesture.

19. Thereafter, Defendant Cunningham began changing Ms. Klenke's assignments. On occasion, he would re-assign her to a more favorable

position to show her that a personal relationship with Defendant would be beneficial to her.

20. Defendant Cunningham has a history of sexual harassment and sexual harassment complaints made by multiple women employed by the MDOC.

21. When Defendant Cunningham continued to harass Ms. Klenke after she did not return his unwanted advances by phone, text messages, personal and work email, and Snapchat. The content of this communication was personal and sexual in nature.

22. On September 20, 2019, Ms. Klenke filed a complaint form for discriminatory harassment with the Michigan Department of Corrections.

23. In March of 2020, Defendant Cunningham allegedly had a disciplinary hearing. After that hearing, despite Ms. Klenke's complaint being substantiated by Internal Affairs Chief Stephen Marschke and Investigator Barber, the outcome of the investigation was changed and Ms. Klene's claims were declared "unfounded."

24. Upon information and belief, Defendant Warner changed the outcome of Ms. Kleke's complaint and has a pattern and practice of changing results of investigations or instructing others to do so on her behalf.

25. Ms. Klenke did not receive any follow-up or documentation regarding the status of her complaint or a decision, and ultimately, Defendant Cunningham

5

was never disciplined so he continued to sexually harass Ms. Klenke in the workplace.

26. Me. Klenke was thus denied her right to a neutral arbiter.

27. In February of 2020, Defendant Cunningham spoke with Officer Short and told him it was difficult to work with Ms. Klenke and he wanted to sit down and talk to her.  He went into detail about his sexual experiences and told Officer Short that he could not "move past" Ms. Klenke.

28. Ms. Klenke learned of the conversation Defendant Cunningham had with Officer Short from Officer Short.  She then reported the conversation to the investigator working on her prior complaint.

29. In May of 2020, after Ms. Klenke had to Defendant Cunningham on multiple occasions not to contact her, he attempted to add her on Snapchat, a social media app used for sending pictures.

30. In approximately July of 2020, Sergeant Breedlove approached Ms. Klenke and informed her that Defendant Cunningham had conversations with him and said that "it was not a matter of how [Cunningham and Klenke] got back together, but when…"  Sgt. Breedlove asked Ms. Klenke if she desired to file a formal complaint and she responded that she did.

31. In approximately July of 2020, Defendant Cunningham was in Ms. Klenke's assigned area for no reason and it was recognized by Sergeant Denison.

32. Defendant Cunningham made Ms. Klenke feel increasingly more uncomfortable by making efforts to be in her presence at work without reason.

33. On or about July 8, 2020, Ms. Klenke, who was mandated on the 2-10 shift, was informed that she was being reassigned to the 6-2 shift because of the prior complaint she filed against Defendant Cunningham. This resulted in a reduction in pay from November 2019 until August 23, 2020. Defendant Cunningham was not disciplined, did not suffer a pay reduction, and was not required to switch shifts.

34. After Ms. Klenke was reassigned, Warden Greg Skipper called Ms. Klenke randomly to reassure her that he had nothing to do with her shift change and that it was her union's fault.

35. On July 8, 2020, Ms. Klenke filed a second formal complaint against Defendant Cunningham for sexual harassment.

36. The initial investigation against Defendant Cunningham yielded no results and Ms. Klenke was put back on the 2-10 shift – the same shift as Defendant Cunningham. The Department took no steps to protect Ms. Klenke from harassment and Defendant Cunningham was not disciplined.

37. On August 14, 2020, Ms. Klenke emailed Defendant Warner and expressed her concerns with the way in which her prior complaint against Defendant

Cunningham was handled and also expressed a fear that her July 2020 complaint would be handled in the same manner.

38. In approximately September of 2020, prisoners in I-2 segregation began harassing Ms. Klenke regarding the complaints she made against Defendant Cunningham – information which most likely came from Defendant Cunningham or from someone who had conversations with Defendant Cunningham regarding Ms. Klenke. They had knowledge of details of the investigation, taunted Ms. Klenke for filing the complaints against a supervisor when Defendant Cunningham had a wife and children and caused Ms. Klenke to fear for her overall safety.

39. Because of the immense stress Ms. Klenke was under as a result of the sexual harassment by Defendant Cunningham, she was left with no other option than to take a stress leave from October 1, 2020 through November 6, 2020 for which she was never compensated.

40. At that time, Ms. Klenke asked Warden Greg Skipper because she feared for her safety. He responded that she should contact her union and did nothing regarding her request.

41. Thereafter, Ms. Klenke was retaliated against for filing complaints against Defendant Cunningham by being placed in unsafe working conditions, including but not limited to: working around prisoners who knew personal

information about her, being forced to work without a partner to back her up, and being placed on the most undesirable assignments in the facility making Ms. Klenke feel unsafe.

42. In January 2021, Ms. Klenke requested a transfer from the Michigan Reformatory facility through human resources.

43. As a direct and proximate result of Defendants' wrongful conduct and actions, Plaintiff suffered and continues to suffer the following injuries and damages including, but not limited to:

a. wage loss;

b. loss of contract benefits or expectancy;

c. loss of goodwill;

d. harm to reputation;

e. loss of esteem and standing in the community;

f. pain and suffering;

g. mental anguish;

h. emotional distress;

i. severe anxiety;

j. fear and humiliation;

k. medical treatment;

l. stigmatization of her reputation;

    m. punitive damages;

    n. reasonable attorney fees and costs;

    o. other damages to be revealed during the course of discovery and litigation.

## COUNT I –42 U.S.C. §1983
## VIOLATION OF THE FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS
### As to Defendant Warner

44. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

45. Ms. Klenke was denied her right to a neutral arbiter when the results of her investigation were changed and she was not notified of any decision regarding her complaint against Defendant Cunningham.

46. All actions taken by Defendant were done while acting under the color of law and had the effect of depriving Plaintiff of her rights as secured by the Constitution and laws of the United States, specifically the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

47. Defendant violated Plaintiff's 14th Amendment right to due process – namely her opportunity to be heard by a neutral arbiter.

48. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages, including costs of litigation and attorney fees, pursuant to 42 U.S.C. § 1988.

49. Further, Defendants' egregious conduct was carried out purposefully, willfully, knowingly and/or with deliberate indifference to Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

## COUNT II –42 U.S.C. §1983
## VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION
### As to All Defendants

50. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

51. Plaintiff is a member of a protected class and was unlawfully discriminated against because of her sex.

52. All actions taken by Defendants were done while acting under the color of law and had the effect of depriving Plaintiff of her rights as secured by the Constitution and laws of the United States, specifically the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

53. Defendants' acts were intentional malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's Constitutional rights.

54. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages, including costs of litigation and attorney fees, pursuant to 42 U.S.C. § 1988.

55. Further, Defendants' egregious conduct was carried out purposefully, willfully, knowingly and/or with deliberate indifference to Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

## COUNT III – VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT

*Disparate Treatment – As to All Defendants*

56. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

57. At all material times, Plaintiff was an employee, and Defendant MDOC was an employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq.

58. Plaintiff's sex was at least one factor that made a difference in Defendants' treatment of Plaintiff.

59. Defendants, through their agents, representatives, and employees, were predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

60. Defendants, through their agents, representatives, and employees, treated Plaintiff differently from similarly situated employees in the terms and conditions of employment, based on unlawful consideration of her sex.

61. Defendants' actions were in intentional disregard for Plaintiff's rights and sensibilities.

62. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

### COUNT IV – VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT

*Retaliation – As to All Defendants*

63. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

64. Defendants retaliated against Plaintiff for complaining about Defendants' discriminatory and/or illegal practices.

65. Plaintiff complained numerous times regarding the practices and her treatment, and nothing was ever done to remedy the situation.

66. Defendants' actions were intentional, with indifference to Plaintiff's rights and sensibilities.

67. As a direct and proximate result of Defendants' actions, Plaintiff has sustained and continues to sustain injuries and damages.

### COUNT V – VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT

*Hostile Work Environment– As to All Defendants*

68. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

69. Plaintiff was subject to unwelcome verbal or physical conduct due to her sex.

70. The unwelcome conduct affected a term and/or condition of her employment and/or had the purpose or effect of unreasonably interfering with Plaintiff's work performance and/or creating an intimidating, hostile, or offensive work environment.

71. As a direct and proximate result of Defendants' actions, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE, Plaintiff requests that this court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and such other relief as the court deems just under the circumstances.

Respectfully submitted,

*/s/ Hannah R. Fielstra*
Hannah R. Fielstra (P82101)
**Ernst Charara & Lovell, PLC**
Attorney for Plaintiff

Dated: February 26, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2021 I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system which will send notification of such filing to the above listed attorneys of record and by certified mail to Defendants.

/s/ *Deanna Denby*
Deanna Denby

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

KRISTY KLENKE, Case No.

Plaintiff, Hon.

vs.

MARIO CUNNINGHAM, KATHY WARNER,
and GREG SKIPPER,
in their individual capacities,

Defendants.

---

Hannah R. Fielstra (P82101)
Kevin S. Ernst (P44543)
ERNST CHARARA & LOVELL, PLC
Attorneys for Plaintiff
645 Griswold, Ste. 4100
Detroit, MI 48226
(313) 965-5555 / (313) 965-5556
hannah@ecllawfirm.com
kevin@ecllawfirm.com

---

**JURY DEMAND**

Plaintiff hereby requests a trial by jury in the above-captioned matter.

Respectfully Submitted,

/s/ Hannah R. Fielstra
KEVIN S. ERNST (P44223)
HANNAH R. FIELSTRA (P82101)
ERNST CHARARA & LOVELL, PLC
645 Griswold, Suite 4100
Detroit, MI 48226
(313) 965-5555 / (313) 965-5556

<div align="right">
kevin@ecllawfirm.com
hannah@ecllawfirm.com
</div>

Dated: February 26, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2021 I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system which will send notification of such filing to the above listed attorneys of record and by certified mail to Defendants.

/s/ *Deanna Denby*
Deanna Denby